CHARLES GASPER *et al. vs.* WILLIAM P. HEIMBACH.

Argued by appellant, submitted on brief by respondent May 17, 1893. Decided June 6, 1893.

Contract Construed.

A written contract for the sale of logs "boomed and delivered to tug" construed, in connection with the evidence, as meaning that the seller was to inclose the logs in a boom, so that a tug could fasten to them and tow them away.

Written Contract not Varied by Contemporaneous Oral Understanding.

A contemporaneous oral agreement to inclose the logs within a boom, and fasten the two separate ends of the boom to the shore, *held* incompetent, as being at variance with the written agreement.

Practice—Exception to Ruling Admitting Evidence, not Waived.

A party excepting to the admission of objectionable evidence does not waive his exception by subsequently moving that the evidence be stricken out, if such motion be not granted.

Appeal by defendant, William P. Heimbach, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made February 11, 1893, denying his motion for a new trial.

Duluth, Minn., Feb. 18, 1892.

Chas. Gasper, Chas. A. Peterson, Fond du Lac, Minn.

Gentlemen: I will give you eight ($8) per M, Surveyor General scale, this district, for your logs marked "G. P." numbering about

1,800 pieces, boomed and delivered to tug. I will furnish you with chains necessary to boom them, payments to be made as follows, viz.: Eight hundred ($800) dollars on the 22nd day of February, 1892, and note at ninety days without interest for four hundred ($400) dollars, and balance to settle account July 1st, 1892, after date. It is agreed that you are to pay Surveyor General scale bills.

Yours truly,          W. P. Heimbach.

Accepted:

        Chas. A. Peterson,

        Charles Gasper.

The plaintiffs, Charles Gasper and Charles A. Peterson received the $1,200 mentioned in the foregoing contract, and brought this action to recover a balance of $547.80, which they claimed due them for 1,761 logs containing 220,000 feet of lumber. The scale bill was $12.20. The logs were at Fond du Lac, a few miles above Duluth, secured to the shore by a boom fastened to the shore at each end. Before the logs could be delivered to tug in the Spring after the ice broke up, the boom broke and the logs were carried down into St. Louis bay, and 705 pieces, estimated to contain 130,-500 feet of lumber, were wholly lost. The contention in this case is, which party must sustain the loss.

The issues were tried November 11, 1892, before Judge *O. P. Stearns*, and plaintiffs had a verdict. A motion for a trial was made by consent before Judge *J. D. Ensign*, for the reason that Judge *Stearns* was sick and in Southern California.

*White, Reynolds & Schmidt*, for appellant.

The reason for the verdict against appellant is doubtless found in the testimony of Gasper to the effect that when he made the contract, shown by his acceptance, and just before the making of it, they told Heimbach that they would sell the logs to him where they lay, and he said all right, he would take them. This was clearly a variation of the written contract, and was objected to at the time when offered, and admitted over defendant's objection and exception. This was error, for which he is entitled to a new trial. *City of Winona* v. *Thompson*, 24 Minn. 199; *Kessler* v. *Smith*, 42 Minn. 494.

The property belonged to plaintiffs at the time of the loss.   Before the logs were to be delivered to, and received by, the defendant, they were to be boomed and ready for delivery.   They were never so boomed and ready for delivery.   *Simmons* v. *Swift*, 5 B. & C. 860; *Joyce* v. *Adams*, 8 N. Y. 291; *Rigler* v. *Hall*, 54 N. Y. 167; *Hoover* v. *Maher*, 51 Minn. 269; *Pike* v. *Vaughn*, 39 Wis. 499; *Gill* v. *Benjamin*, 64 Wis. 362.

*Cotton & Dibell*, for respondents.

The substantial question to be determined by this appeal is, whether the respondents or appellant must bear the loss of the 705 logs which floated down the river and were not recovered.

When a party objects to the reception of evidence which is received over his objection, and he afterwards presses a motion to strike it out, which is granted, he will be held to have waived his objection and exception.   *Juergens* v. *Thom*, 39 Minn. 458; *Furst* v. *Second Avenue R. Co.*, 72 N. Y. 542.

The written memorandum did not purport to be a complete legal obligation, containing every material term and item of the agreement.   It was merely a memorandum within the statute of frauds. Parol evidence could not be admitted to contradict the terms expressed in the writing.   But as to other terms of the agreement, not contradictory of the terms expressed in the writing, parol evidence was competent.   *Beyerstedt* v. *Winona Mill Co.*, 49 Minn. 1; *Domestic Sewing-Machine Co.* v. *Anderson*, 23 Minn. 57; *Boynton Furnace Co.* v. *Clark*, 42 Minn. 335; *Head* v. *Miller*, 45 Minn. 446.

At the date of the agreement the logs were rolled in along the bank of the river and defendant had looked them over.   He was to have all the logs then banked on the river.   There had been a specific appropriation of the logs to the contract.   The price had been agreed upon.   The terms of payment had been settled, and $800 in cash had actually been paid.   Under these facts the title to the logs in question had passed to the appellant Heimbach.   *Rail* v. *Little Falls Lumber Co.*, 47 Minn. 422; *Muskegon Booming Co.* v. *Underhill*, 43 Mich. 629; *Terry* v. *Wheeler*, 25 N. Y. 520; *Hatch* v. *Oil Co.*, 100 U. S. 124; *Bethel Steam Mill Co.* v. *Brown*, 57 Me. 9.

DICKINSON, J. These parties entered into a written contract for the sale, by the plaintiffs to the defendant, of a quantity of saw logs "boomed and delivered to tug." The purchaser was to furnish the sellers with chains necessary to boom them. The logs were on or at an island in the St. Louis river. The plaintiffs inclosed the logs in a boom, the two ends of which were fastened to the island, so that the boom did not completely surround the logs. While the logs were in this situation the boom broke, under circumstances concerning which the evidence was conflicting, and many of the logs were lost. The controversy in this action is as to which party should bear the loss; and that depends upon the question whether the plaintiffs had done all that was required of them under the contract; whether they were still in possession and control of the logs, or whether the same had been delivered to, and were under the control of, the defendant.

The evidence on the part of the plaintiffs, as well as on the part of the defendant, showed, and without contradiction, that, as applied in business of this kind, the language of the contract, "boomed and delivered to tug," signifies that the logs are to be completely inclosed in a boom, so that a tug can fasten to them and tow them away; and even without such evidence this would seem to be the meaning of that language of the contract. At the trial one of the plaintiffs was allowed to testify to a conversation between themselves and the defendant, at or prior to the making of the written contract, as follows: "We said we would sell the logs right to him on the spot where they lay, but we would take no more responsibility after he had bought them. *We would put in the chains, and tie them to the shore; and that is the way we wanted to sell them.* * * * He said, 'All right, I will take—' " At this point the witness was interrupted by a motion on the part of the defendant to strike out the evidence, and the sentence was not completed; but the witness had stated so much that the jury would probably understand the testimony as indicating that the defendant accepted the terms thus proposed. All this evidence was properly objected to, for the reason that it was at variance with the written contract. The objection was well founded. Particularly that part of this evidence which we have put in italics went to vary the written

v.53M.—27

agreement of the plaintiffs that the logs should be "boomed and delivered to tug." The obvious purpose and tendency of the testimony was to show that the plaintiffs' undertaking was only to do what they had done,—inclose the logs within a boom, the two separate ends of which should be fastened to the shore. The written contract expressed a different obligation.

The contention that this error was waived or cured by the motion of the defendant that the evidence be stricken out, and by the ruling of the court thereon, cannot prevail. The court did not strike out the objectionable testimony. The most that can be said in support of the respondents in this particular is that the court left it entirely uncertain whether any of the testimony was stricken out, and what, if any, was thus excluded. The exception to the reception of the evidence was well taken.

It may be assumed that, by moving to have the evidence stricken out, the defendant consented to that mode of remedying the error, so that, if his motion had been granted, the defendant would have been deemed to have waived his previous exception; but, as that remedy was *not* granted, he cannot be supposed to have relinquished his exception to the admission of the evidence, even though he did not except to the ruling of the court on his motion.

Our conclusion is not affected by the fact that, when the defendant was about to send to have the logs taken down the river, he concluded to dispense with the use of a tug, and to employ men to float the logs, within the inclosing boom, down the river. There does not appear to have been any modification of the conditions of the written contract as to the manner in which the plaintiffs should boom the logs for delivery; at least, it is not clear that there was any modification or waiver of the agreement in this particular.

Order reversed.

VANDERBURGH, J., absent.

(Opinion published 55 N. W. Rep. 559.)