CHARLES GASPER *et al. vs.* WILLIAM P. HEIMBACH.

Argued by appellant, submitted on brief by respondent, Oct. 17, 1894. Reversed
Nov. 12, 1894.

No. 8970.

Verdict not sustained.

*Held,* the verdict is not sustained by the evidence.

Appeal by defendant, William P. Heimbach, from an order of the
District Court of St. Louis County, *Calvin L. Brown,* J., made 'January 5, 1894, denying his motion for a new trial.

The plaintiffs Charles Gasper and Charles A. Peterson of Fond
du Lac accepted an offer made to them by defendant to buy of them
a quantity of pine sawlogs then in the St. Louis river or partly on
the bank at the foot of Peterson's Island, a few miles up that river
from Duluth.   The offer was as follows:

Duluth, Minn., Feb. 18, 1892.
Chas. Gasper, Chas. A. Peterson, Fond du Lac, Minn.

Gentlemen:—I will give you eight ($8) per M., Surveyor General scale, this district, for your logs marked "G. P." numbering
about 1,800 pieces, boomed and delivered to tug.   I will furnish
you with chains necessary to boom them, payments to be made as
follows, viz:   Eight hundred ($800) dollars on the 22nd day of
February, 1892, and note at ninety days without interest for four
hundred ($400) dollars, and balance to settle account July 1st, 1892,
after date.   It is agreed that you are to pay Surveyor General scale
bills.   Yours truly,                    W. P. Heimbach.

Accepted:
    Chas. A. Peterson,
    Charles Gasper.

Plaintiffs received the $800 and the note for $400.   The logs,
1,761 pieces, were then secured by a boom fastened to a tree on the
shore at the upper end and running out around the logs and again
fastened to another tree on the shore below.   They were estimated
to contain 220,000 feet of lumber.   After the ice went out in the
spring defendant said to Gasper, one of plaintiffs, that he preferred

to take the logs down to Duluth with men instead of by a tug, it would be cheaper. The last of April, 1892, he sent Joe Bovillard with two other men for the logs. Bovillard, at the request of plaintiffs, rolled into the river such of them as were aground on the shore and he and plaintiff Gasper attempted to enclose them all in a floating boom unconnected with the shore, so that they could be taken by the current down the river in a body. Gasper procured a rope for that purpose. Bovillard on seeing it said, "I don't think this rope is going to stand." Gasper replied, "It will stand all right." So they put it on and began to ease the boom down and out into the current, so as to be able to bring together and connect the two ends of the boom between the logs and the shore. Gasper attended to this with the men, while Bovillard went off to get and bring in nine logs lying outside the boom. While he was after those logs the rope broke. The stream was high, the current strong and the logs escaped and were scattered, 705 pieces estimated to contain 89,500 feet of lumber were never recovered. The plaintiffs claimed the logs had been delivered by them and accepted by defendant's servants and that the loss must fall upon him. They brought this action to recover the balance, $547.80. They obtained a verdict. Defendant moved for a new trial, but was denied and he appeals. The facts as they appeared on a former trial are stated in 53 Minn. 414. The discussion upon the argument of the present appeal was upon the evidence, whether it was sufficient to support the verdict.

*Cotton, Dibell & Reynolds,* for appellant.

*White & McKeon,* for respondents.

CANTY, J. This case was before this court on a former appeal. See 53 Minn. 414, (55 N. W. 559.) Plaintiffs and defendant, on February 18, 1892, entered into an agreement whereby plaintiffs agreed to sell and deliver to defendant 1,800 logs "boomed and delivered to tug," at an agreed price and according to the surveyor general's scale, defendant to furnish the chains necessary to boom the logs.

The complaint alleges that, after making this agreement, the parties modified it by agreeing that the logs "should be delivered to

defendant, or to men sent therefor by him, instead of to a tug furnished therefor by defendant;" that plaintiffs boomed and delivered to the men sent therefor by defendant 1,761 pieces of said logs, and defendant received and accepted the same; that the defendant procured the surveyor general to scale 1,056 pieces of said logs, as provided by the agreement, but wholly neglected, failed, and refused, after receiving and accepting said logs, to allow, permit, or procure the other 705 pieces to be scaled by such surveyor general; that, in fact, these 705 pieces contained 89,500 feet,—and demands judgment for a balance claimed to be due therefor.

The answer admits the making of the original agreement; but denies that it was ever changed or modified, and alleges that, in attempting to boom the logs, plaintiffs were so careless and negligent that the boom broke, and the logs ran down the river, and scattered, and a large part of them never have been found; that defendant, at great expense, picked up and secured 1,056 pieces of said logs, and no more; and that the rest have never been delivered to him. It is admitted by the complaint that defendant paid more than the sum that would be due for these 1,056 logs, admitted by defendant to have been delivered to him.

On the trial the jury returned a verdict for the plaintiffs, and from an order denying his motion for a new trial defendant appeals.

On the trial it was proved by uncontradicted expert testimony that in the logging busiess the word "boom," in the term "boom and deliver" to tug or to men, means to completely inclose logs afloat in a boom, chained and fastened together at the ends; and, as said in the former opinion, "even without such evidence, this would seem to be the meaning of that language of the contract." This is not disputed by plaintiffs, though they do not attempt to prove that the logs were thus boomed when they claim they were delivered by them to defendant. They claim that defendant waived this provision of the contract, and that the logs were delivered to him, and he received and accepted them without their being thus completely inclosed and secured afloat in a boom. We cannot agree with plaintiffs' counsel on this point, and are of the opinion that the evidence does not prove that said 705 logs were ever delivered to defendant, or received or accepted by him, and that, consequently, the evidence does not sustain the verdict.

It appears by the evidence that, at the time appointed for the delivery of the logs, all of them except eight or ten logs were at the foot of an island in the St. Louis river.   About 200 of them were on the ground above the shore, and the rest were afloat, surrounded on three sides by the boom, each end of which was tied to a tree on the shore; but the boom did not extend around the logs along the shore, or completely inclose them, and the ends of this boom were not fastened together.   It does not appear that defendant ever saw the logs while thus situated, or knew that they were in this condition. One of the plaintiffs testified that he was on the train with defendant just before this time; that defendant then told him that he wanted to take the logs down by men, instead of by tug.   "Then he asked me if the chains were on them, and if they were tied to the island, and I said, 'Yes.'   And he said, 'I will send Black Joe to take those logs right there, if you have no objection.'   I said I had no objection."   Instead of this conversation informing defendant of the real situation of the logs, it seems to us it was more in the nature of a representation that the logs were properly boomed, ready to be delivered according to the agreement.   Then the statement of defendant that he would send his servant "to take them right there" cannot be construed as a waiver of the agreement to boom the logs ready for delivery.

Neither does it appear that this servant Joe had any authority to waive this provision in the agreement.   He was not in defendant's service prior to this.   Defendant testifies: "I told him, when they got the raft ready, to bring them down;" "when the raft was ready, to order what he wanted from me, and I would send it to him at Fond du Lac, to send the raft down the river."   Joe himself testifies: "He [defendant] told me, 'After the raft is ready, closed, and delivered to you, try and get it down.'"   This is all the evidence of the servant's authority.   One of the plaintiffs testified on their behalf that Joe came to him, and stated that he had a job from defendant "to take down those logs," and wanted from plaintiffs the job of rolling into the river the logs that were aground; that witness employed him for this purpose, and he rolled the logs into the river. It is the undisputed evidence of both these witnesses that the plaintiff then borrowed from one of his neighbors a rope, and assisted Joe in slacking the boom down the river, and opening it, to let in said

eight or ten logs, and, in attempting to get the boom in a position to close it, this rope broke, and the logs went down the river, and scattered along down into St. Louis bay. It seems to us that it must be held, as a question of law, that during this time Joe was the servant of the plaintiffs, and not of the defendant; and his own statement, just before the rope was borrowed, "that he was done with" plaintiffs, is no evidence against defendant.

Said plaintiff further testified that he met defendant a day or two after the logs escaped, and told him he should have sent a man there. He answered that "he thought the man was capable to take down a raft of logs," and "said he was going to take a tug, and pick them up." "I said I had nothing to do with it." We cannot see that this would make defendant liable for any more logs than he 'has received. It did not amount to an agreement that he would recover all the logs, or that he would pay for all of them, whether he received them or not.

The complaint alleges that, by the original agreement, defendant agreed to pay $800 on February 22, 1892, and give his note for $400, due in three months, which he did, and has paid both of said sums. The answer admits that this note was paid at maturity. There is evidence to prove that the logs escaped the last of April, while this note was not due until the 22d of May, thereafter. It is urged by plaintiffs' counsel that this admission that defendant paid his note after the logs escaped is sufficient to show a waiver of the agreement to boom the logs ready for tug or men to take them down the river, and an acceptance of all the logs. The complaint alleges no waiver of the agreement to boom, but a full performance of that part of the contract. Neither do we find anything in the proceedings during the trial until after the testimony was closed which can be said to fairly apprise the defendant that a claim of waiver would be made by plaintiffs. The evidence introduced tended as much to prove performance as waiver, or more, but did not prove either as to the 705 logs.

It is not necessary here to decide whether or not proof of such a waiver of full performance, and acceptance of part performance under an allegation of full performance, is a material variance from the cause of action alleged in the complaint.

It does not appear to whom defendant paid this note, or under what circumstances he paid it. For all that appears, he may, as

claimed on the argument, have paid it to an innocent indorsee, for value, before maturity.   Of course, this is not to be presumed; but, for the purpose for which this evidence is now attempted to be used, how far should the presumption be made against him that he paid it to plaintiffs?   As far as he was fairly apprised of the allegations of the complaint, his admission was sufficiently definite for all the purposes of his defense.   This is not a direct admission of waiver, and, under the circumstances of this case, this indefinite admission cannot be given the weight thus claimed for it, as mere circumstantial evidence of a fact which plaintiffs have never pleaded, or fairly apprised defendant they were attempting to prove.   A particular circumstance derives its weight as circumstantial evidence largely from its relation to other circumstances in the case.   In one combination of circumstances, it may have much weight; in another, but little.   This admission of payment, when used as mere circumstantial evidence to prove this waiver, is robbed of much of its weight by the circumstances of the case, and, in our opinion, is not sufficient to sustain the verdict, though slightly assisted by some other evidence in the case.   The appellant does not assign as error that the verdict is not sustained by the evidence, but the point is covered by his exception to the charge as given, and to the refusal to charge as he requested.

This disposes of the case, and the order appealed from must be reversed.   So ordered.

(Opinion published 60 N. W. 1080.)